# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KATHY RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-04552-TWP-MPB |
| | ) | |
| MUNCIE COMMUNITY SCHOOL CORPORATION, and BOARD OF TRUSTEES OF MUNCIE COMMUNITY SCHOOL CORPORATION, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON DEFENDANTS' MOTION FOR PARTIAL DISMISSAL PURSUANT TO RULE 12(b)(6)

This matter is before the Court on Defendants Muncie Community School Corporation's ("MCS") and Board of Trustees of Muncie Community School Corporation's (the "Board") (collectively, "Defendants") Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Filing No. 10). Plaintiff Kathy Ray ("Ray") brings claims against Defendants alleging violations under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging that she was subjected to a hostile work environment, on the basis of race and sex (Filing No. 1). For the following reasons the motion is **granted**.

## I. BACKGROUND

The following facts from Ray's Complaint are accepted as true, and all favorable inferences are drawn in favor of Ray for purposes of this Motion. *See Killingsworth v. HSBC Bank,* 507 F.3d 614, 618 (7th Cir. 2007). Ray is Caucasian. MCS employed Ray as a teacher and administrator over the course of nearly thirty-four (34) years. (Filing No. 1 at 2.) She served as Director of

Human Resources before her separation from MCS. *Id.* Ray reported directly to Steven Baule ("Baule"), Superintendent of MCS, who was hired in July 2015.[1]

After Baule's hiring, he began engaging in a course of inappropriate and offensive conduct that created a hostile work environment. Much of the offensive conduct and comments were on the basis of race and sex, and occurred in the presence of Ray. *Id.* In addition to personally observing the offensive conduct, Ray was also the recipient of offensive comments. A sample of Baule's racially-based comments are as follows[2]:

> In the presence of African-American employees, Baule asked one of those employees "is that a black girl face?" When asked what he meant by a "black girl face," Baule stated "there is a difference between a white girl face and a black girl face…I've seen that before."
>
> In the presence of the Plaintiff and other employees, Baule made a joke that a "black guy and a Hispanic guy" could never marry "because their kids would be too lazy to steal."
>
> Baule commented to a Caucasian employee that she was "darker than that one" in reference to an African American employee that was present.
>
> During a discussion regarding the mission work of an MCS student, Baule stated – in front of two African American employees - in reference to citizens of Haiti that "they are black, BLACK!"
>
> Baule informed one African American employee that another African American employee was "the only black person in the room."

([Filing No. 1 at 3](#).) Ray reported not only Baule's offensive racial comments, but also offensive sexist and other unprofessional comments as well. ([Filing No. 1 at 6](#).) Counsel for MCS appointed a local attorney to conduct an investigation. *Id.* After Baule discovered complaints had been made

---

[1] Although the parties do not state Baule's race, it appears that he is Caucasian based on some of his comments. (*See* [Filing No. 1 at 3](#)) ("At a meeting of the MCS minority administrators, Baule stated 'I came down because I thought there needed to be another white person in this group.'").

[2] Because MCS has only moved to dismiss the race-based claim, the Court declines to discuss the alleged offensive sex/gender based comments, or the other unprofessional comments raised in Ray's Response in Opposition to Defendants' Motion to Dismiss. (*See* [Filing No. 17 at 3-5](#).)

against him, and that an investigation was being conducted, he intensified his conduct toward Ray—believing she was the source of the complaints. Baule expressly stated to Ray, "I hope you don't know anything about what is going on with all of this stuff. . .for those who are involved it will be there [sic] end." *Id*. On another occasion, Baule insinuated that he had connections with the Chicago Mafia attempting to intimidate Ray by stating "I have people who will take care of people." *Id.* at 7. Baule informed a member of the Board that he was going to terminate Ray because he believed she was the source of the complaint against him.

In the beginning of September 2016, Baule continued to interrogate Ray about her role in the investigation of Baule's actions, stating that he has been in "3 knife fights" and is "unscarred". *Id.* This comment combined with Baule's overall intimidating actions and statements, caused Ray to believe that if she participated in the investigation she could either be fired or physically harmed. As a result of the hostile work environment, on September 8, 2016, Ray resigned from her employment as Human Resources Director. *Id.* On December 8, 2017, Ray filed her Complaint in this Court. ([Filing No. 1](#).)

## II. LEGAL STANDARD

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially *plausible*, the complaint must allow "the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III. DISCUSSION

Ray alleges that her constructive discharge and retaliation was due to her reporting of Baule's conduct in creation of a hostile work environment on the basis of race and sex. ([Filing No. 17 at 1](#).) MCS moved to dismiss the racial claim asserting that Ray cannot support a race-based claim for a hostile work environment because she was not subjected to harassment based on her race, rather the race-based comments were based on races to which she is not a member. ([Filing No. 11 at 3-4](#).) MCS also moves to dismiss the miscellaneous unprofessional comments not relating to a protected class.

> Baule stated to several employees of MCS that "retarded kids' ears are below their eyes."
>
> In reference to the President of the Muncie Teacher's Association, Baule stated "I will dance on Pat Kennedy's grave, and I will dig her grave with her skull."
>
> While discussing a high school student with discipline issues, Baule said "when he goes to jail he will meet Tyrone."
>
> Baule routinely stated in reference to MCS employees "I don't have to fire people…I make them miserable enough they leave."
>
> Baule consistently told Plaintiff when she disagreed with Baule that he would replace her with a $50,000.00 per year employee.

(*See* [Filing No. 1 at 5-6](#).) Ray concedes that the comments may not, on their own, provide relief under Title VII, but notes that the comments paint the picture of a hostile working environment that Ray was forced to work in. ([Filing No. 17 at 7](#).) ("However, those incredibly offensive comments may be interpreted by a fact-finder to be based upon race or gender-based discrimination. Moreover, the comments are nonetheless relevant to the analysis of whether Baule created a hostile work environment and exhibited a propensity for retaliation.") To the extent that

these comments contribute to the hostile working environment claim based on race, they are dismissed. The Court agrees, that with the exception of one comment—"Baule consistently told Plaintiff when she disagreed with Baule that he would replace her with a $50,000.00 per year employee" —dismissal is appropriate to prevent the parties from wasting time in discovery related to these miscellaneous unprofessional allegations, which cannot provide evidence to support any legal claim against Defendants.

Defendants' primary contention is that Ray does not have standing to bring a Title VII race-based claim on the basis of race based on offensive comments regarding races of which she is not a member. In support of her contention of standing, Ray cites the United States Supreme Court decision in *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205 (1972), and the Seventh Circuit's decision in *Stewart v. Hannon,* 675 F.2d 846, 850 (7th Cir. 1982). In *Trafficante*, the Supreme Court held that a white apartment tenant—deprived of the "loss of important benefits from interracial associations" resulting from the "exclusion of minority persons from the apartment complex"—had suffered a cognizable injury for both Article III standing and Title VII purposes. *Trafficante,* 409 U.S. at 209-10. However, in reply, MCS notes that the Supreme Court has recognized the *Trafficante* definition of standing for Title VII purposes as dicta and rejected it in its 2011 decision in *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011) ([Filing No. 18 at 2](#)).

> We now find that this dictum was ill-considered, and we decline to follow it. If any person injured in the Article III sense by a Title VII violation could sue, absurd consequences would follow. For example, a shareholder would be able to sue a company for firing a valuable employee for racially discriminatory reasons, so long as he could show that the value of his stock decreased as a consequence.

*Thompson,* 562 U.S. at 176–77. *Stewart* relied on *Trafficante* in reversing the district court's finding that a white plaintiff (on behalf of Black and Hispanic co-plaintiffs) did not have standing

to enjoin defendants from administering an assistant principal examination that contained racial and ethnic discrimination. *Stewart*, 675 F.2d 846 at 850.

> Although the specific injury was not pleaded, the complaint alleged that the plaintiff worked in an environment which was subject to racial discrimination. Since the exclusion of minority persons from a work environment can lead to the loss of important benefits from interracial associations, the complaint sufficiently apprised the parties and the court of the claimed injury. No more was required.

*Id.* Although *Thompson* explicitly rejected *Trafficante's* expansive interpretation of an "aggrieved person", it nevertheless affirmed a plaintiff may file suit under Title VII so long as "he falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Thompson,* 562 U.S. at 177 (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883 (1990)) ("Applying that test here, we conclude that Thompson falls within the zone of interests protected by Title VII. Thompson was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions."). In any event, unlike *Stewart* and *Trafficante*, Ray has not alleged that she was deprived of working in a racially inclusive environment, rather she has alleged that she was "subjected to constant racially insensitive conduct [that] was highly offensive", which is insufficient to state a race claim in this case, accepting as true that Baule made the comments in Ray's presence. ([Filing No. 1 at 3.](#)) In fact, Ray has alleged that some of Baule's comments were blatantly directed to African-American employees, indicating that minorities were not excluded from the work environment (in order for Ray to bring a claim as an "aggrieved person" in a *Trafficante* scenario), even if they were subjected to Baule's highly offensive comments. In reversing the district court's dismissal—which found that the plaintiff "had failed to allege that the discrimination deprived her of the benefits of an integrated working an environment"—the Seventh Circuit held that the failure was not fatal because the Complaint "sufficiently apprised the parties and the court of the claimed injury."

6

*Stewart,* 675 F.2d at 850. The *Stewart* court defined the claimed injury as the "*exclusion of minority persons from a work environment*". *Id.* at 851 (emphasis added).

On a race-based hostile working environment claim, Ray needed to allege that Baule's offensive comments were related to her race, Caucasian, to stave off dismissal. Because Ray has not alleged she was the target of unlawful harassment based on race nor has she alleged that she was deprived of an interracial working environment to be within the "zone of interest" protections of Title VII, *i.e.* aggrieved person, Defendants' partial motion to dismiss is **granted**.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Partial Dismissal (Filing No. 10) is **GRANTED**. Any stand-alone claim related to the miscellaneous unprofessional comments as well as Ray's claim of a hostile work environment for racial harassment is dismissed pursuant to Trial Rule 12(b)(6).

**SO ORDERED.**

Date: 9/28/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jason R. Delk
DELK MCNALLY LLP
delk@delkmcnally.com

Daniel J. Gibson
DELK MCNALLY
gibson@delkmcnally.com

Liberty L. Roberts
CHURCH HITTLE & ANTRIM (Fishers)
lroberts@cchalaw.com